**HALPER SADEH LLP**
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK JUSTUS,<br><br>      Plaintiff,<br><br>   v.<br><br>THE MEET GROUP, INC., JEAN CLIFTON, GEOFFREY COOK, CHRISTOPHER FRALIC, SPENCER RHODES, KEITH RICHMAN, BEDI SINGH, and JASON WHITT,<br><br>      Defendants. | Case No:<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mark Justus ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## **NATURE OF THE ACTION**

1.     This is an action against The Meet Group, Inc. ("Meet Group" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9,

1

in connection with the proposed acquisition (the "Proposed Transaction") of Meet Group by eHarmony Holding, Inc. ("eHarmony") and Holly Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of eHarmony.[1]

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company conducts business and has operations in this District.

5.  In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.  Plaintiff is, and has been at all relevant times hereto, an owner of Meet Group's common stock.

---

[1] eHarmony is a subsidiary of Parship Group GmbH ("Parship Group"). Parship Group is a portfolio company of NCG NUCOM GROUP SE, a European stock corporation ("NuCom") and jointly-held company of ProSiebenSat.1 Media SE ("ProSieben") and General Atlantic Coöperatif U.A. ("General Atlantic"). NuCom is a party to the merger agreement "solely for the purposes of guaranteeing Buyer's obligations under the Merger Agreement[.]"

7. Defendant Meet Group operates a portfolio of mobile social entertainment applications to meet the need for human connection worldwide. The company leverages a live-streaming video platform allowing people to forge connections. The Company's primary applications include MeetMe, LOVOO, Skout, Tagged, and Growlr. The Company is incorporated in Delaware and operates data centers in New Jersey. The Company's common stock trades on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol, "MEET."

8. Defendant Jean Clifton ("Clifton") is a director of the Company.

9. Defendant Geoffrey Cook ("Cook") is the Company's Chief Executive Officer ("CEO") and serves as a director of the Company.

10. Defendant Christopher Fralic ("Fralic") is a director of the Company.

11. Defendant Spencer Rhodes ("Rhodes") is Chairman of the Board.

12. Defendant Keith Richman ("Richman") is a director of the Company.

13. Defendant Bedi Singh ("Singh") is a director of the Company.

14. Defendant Jason Whitt ("Whitt") is a director of the Company.

15. Defendants Clifton, Cook, Fralic, Rhodes, Richman, Singh, and Whitt are collectively referred to herein as the "Individual Defendants."

16. Defendants Meet Group and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

17. On March 5, 2020, Meet Group issued a press release announcing that it had entered into a definitive merger agreement to be acquired by NuCom Group in an all cash transaction for $6.30 per fully diluted share. The press release states, in pertinent part:

## The Meet Group Announces Definitive Agreement to be Acquired by ProSiebenSat.1 and General Atlantic

- *The Meet Group Shareholders to Receive $6.30 per Share in Cash*
- *Transaction Will Provide Certain and Immediate Value to Shareholders*
- *Transaction Expected to Close in the 2nd half 2020*

March 05, 2020 01:30 AM Eastern Standard Time

NEW HOPE, Pa.--(BUSINESS WIRE)--The Meet Group, Inc. (NASDAQ: MEET), a leading portfolio of mobile dating apps, today announced that it has entered into a definitive agreement to be acquired by ProSiebenSat.1`s and General Atlantic's joint company NuCom Group in an all cash transaction for $6.30 per fully diluted share representing an enterprise value of approximately $500 million. Together with NuCom Group's portfolio company Parship Group, a matchmaking platform with its brands Parship, Elite Partner and eharmony, The Meet Group will become an integral part of a global leader in the online dating and social entertainment sector.

*   *   *

The Meet Group's freemium dating brands, featuring its industry-leading video platform technology, will be combined with NuCom's portfolio company Parship Group, which operates premium subscription dating brands including eharmony, Parship and Elite Partner. The transaction will diversify the revenue streams of both companies and increase their combined international footprint by broadening the companies' user base.

**Max Conze, CEO, ProSiebenSat.1 Media SE**: "The acquisition of The Meet Group is one of ProSiebenSat.1's largest transactions. It will significantly advance our ambition to create one of the leading global players in online dating and interactive live video. We believe the combination of these two successful and complementary businesses will also create synergies within the ProSiebenSat.1 universe and accelerate the growth of our market share in the German live video apps sector."

**Tim Schiffers, CEO Parship Group:** "Following a successful acquisition of eharmony, we have proven that we can manage new businesses and accelerate their growth by combining the best of both worlds. We continue to consolidate our position in the online dating market and extend our business model by adding social entertainment. I am looking forward to working with our new colleagues to solidify our international footprint."

The transaction, which is expected to close in the 2nd half of 2020, is subject to approval by The Meet Group's stockholders, along with the satisfaction of customary closing conditions and regulatory approvals, including the expiration or

4

early termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, antitrust approvals in Germany and Austria as well as approval from the Committee on Foreign Investment in the United States. The Meet Group expects to hold a special meeting of its stockholders to consider and vote on the transaction as soon as feasible after the mailing of the proxy statement to shareholders.

The Meet Group plans to release its fourth quarter fiscal year 2019 results before market open on March 11, 2020. In light of the pending transaction announced today, the company will not hold a corresponding conference call.

**Representation**

BofA Securities is acting as financial advisor to The Meet Group, and Morgan, Lewis & Bockius LLP is acting as legal counsel.

**About The Meet Group**

The Meet Group (NASDAQ: MEET) is a leading provider of interactive livestreaming solutions designed to meet the universal need for human connection. Our ecosystem of livestreaming apps enables users around the world to interact through one-to-many livestreaming broadcasts and text-based conversations. Our top apps, MeetMe®, LOVOO®, Skout®, Tagged® and Growlr®, deliver live interactions and meaningful connections to millions of users daily. Headquartered in New Hope, PA, we have offices in Philadelphia, San Francisco, Dresden, and Berlin. The Meet Group is committed to safety. You can find a description of current safety practices here: https://www.themeetgroup.com/safety-practices/. For more information, visit themeetgroup.com, and follow us on Facebook, Twitter or LinkedIn.

**About ProSiebenSat.1 Media SE**

ProSiebenSat.1 combines leading entertainment brands with a successful production business and a strongly growing commerce portfolio and is thus one of the most diversified media companies in Europe. We want to offer great entertainment – whenever, wherever and on any device. We can address over 45 million TV households in Germany, Austria and Switzerland with our 15 free and pay TV channels. At the same time, we reach around 36 million unique users every month with online offerings marketed by ProSiebenSat.1. Successful formats like "The Masked Singer", "Germany's Next Topmodel", and "Beat the Channel" as well as top-notch stars like Heidi Klum, or Dwayne Johnson belong to our family. Shows like "Bosch", "Married at First Sight", or "Queen of Drags" are created within our production and distribution business Red Arrow Studios. Our global digital studio Studio71 achieves over 9.9 billion monthly video views and operates more than 1,400 web channels. Our NuCom Group is a rapidly growing e-commerce player with leading portfolio companies that offer online price

comparison, matchmaking, experiences as well as beauty & lifestyle. ProSiebenSat.1 are more than 7,000 passionate creators that love to entertain and delight our viewers and consumers each day.

**About General Atlantic**

General Atlantic is a leading global growth equity firm providing capital and strategic support for growth companies. Established in 1980, General Atlantic combines a collaborative global approach, sector specific expertise, a long-term investment horizon and a deep understanding of growth drivers to partner with great entrepreneurs and management teams to build exceptional businesses worldwide. General Atlantic has more than 150 investment professionals based in New York, Amsterdam, Beijing, Greenwich, Hong Kong, Jakarta, London, Mexico City, Mumbai, Munich, Palo Alto, São Paulo, Shanghai, and Singapore. For more information on General Atlantic, please visit the website: www.generalatlantic.com.

**About NuCom Group**

NuCom Group is the growth partner for consumer internet companies. We create global category leaders and accelerate the growth of our portfolio companies by adding marketing power, operational expertise and clear buy-and-build strategies. Thereby we combine the strengths of our shareholders in a "best of both worlds" approach, featuring the reach, know-how and resources from the ProSiebenSat.1 Group and the expertise and firepower of General Atlantic, a leading global growth equity investor. We focus on B2C asset light business models with a clear USP and differentiation. Currently our portfolio is divided in four verticals: consumer advice, matchmaking, experience and gift vouchers and beauty and lifestyle. https://www.nucom.group/

**About Parship Group**

The Parship Group is the leading provider of online matchmaking services. The well-known international brands Parship, ElitePartner and eharmony belong to the group. All three services use scientific methods to successfully support singles in finding meaningful relationships that enrich their lives. Both Parship and eharmony are pioneers in using algorithms to create highly compatible relationships. California-based eharmony was founded in 2000 and operates in the United States, Canada, the United Kingdom and Australia. Parship invented scientific matchmaking in Europe in 2001 and today offers its service in the German-speaking world and the Benelux countries. Since 2004, ElitePartner is the premium partner agency for sophisticated singles, operating in the DACH-region. Currently, the Parship Group employs over 300 colleagues in Hamburg / Germany (headquarters), Los Angeles, London and Amsterdam. https://www.parshipgroup.com/

18. On April 2, 2020, Defendants caused to be filed with the SEC a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Securities Exchange Act of 1934 in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

19. The Proxy Statement, which recommends that Meet Group shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; (ii) the financial analyses performed by the Company's financial advisor, BofA Securities, Inc. ("BofA"), in connection with its fairness opinion; and (iii) the sales process leading up to the Proposed Transaction.

20. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Reasons for the Merger; Company Board Recommendation; (iii) Opinion of The Meet Group's Financial Advisor; and (iv) Certain Company Unaudited Prospective Financial Information.

21. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote, Meet Group shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning the Company's Financial Projections**

22. The Proxy Statement omits material information concerning the Company's financial projections.

23. The Company's "management prepared certain non-public financial projections as to the potential future performance of the Company for the years 2020 through 2024" (the

"Management Projections"). The Management Projections were "provided to the Company Board [and] . . . were also provided to BofA[.]"

24. With respect to the Management Projections, the Proxy Statement fails to disclose (1) all line items used to calculate Adjusted EBITDA; and (2) a reconciliation of all non-GAAP to GAAP metrics.

25. The disclosure of the Company's projected financial information is material because it would provide Meet Group shareholders with a basis to project the future financial performance of Meet Group and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

26. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Meet Group shareholders.

**2. Material Omissions Concerning BofA's Financial Analyses**

27. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning the analyses performed by BofA.

28. The Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction utilized by BofA in its "*Selected Publicly Traded Companies Analysis*" and "*Selected Precedent Transactions Analysis*."

29. The Proxy Statement fails to disclose the following concerning BofA's

"*Discounted Cash Flow Analysis*": (1) the terminal values for the Company; (2) the individual inputs and assumptions underlying the (i) discount rates ranging from 7.50% to 10.00% and 7.00% to 9.00%, (ii) perpetuity growth rates of 1.9% to 5.3%; (iii) terminal multiples of 8.0x to 10.0x; and (iv) assumed effective tax rate of 21%; and (5) tax benefits estimated to result from the net operating losses (NOLs).

30. With respect to BofA's analysis of analyst stock price targets for the Company, the Proxy Statement fails to disclose: (1) the individual price targets for Meet Group observed by BofA in its analysis; and (2) the sources of those price targets.

31. The valuation methods, underlying assumptions, and key inputs used by BofA in rendering its purported fairness opinion must be fairly disclosed to Meet Group shareholders. The description of BofA's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Meet Group shareholders are unable to fully understand BofA's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Meet Group shareholders.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

32. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

33. The Proxy Statement provides that Meet Group entered into confidentiality agreements leading up to the Proposed Transaction, including "with Company B's private equity sponsor" on December 11, 2019.

34. The Proxy Statement, however, fails to disclose whether Meet Group's

confidentiality agreements contained standstill provisions with "don't ask, don't waive" ("DADW") provisions (including their time of enforcement) that would preclude interested parties from making superior offers for Meet Group.

35. Without this information, Meet Group's shareholders may have the mistaken belief that potential buyers are or were permitted to submit superior proposals for Meet Group, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Meet Group shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

36. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Meet Group shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

37. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

39. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use

of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

40. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

41. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

42. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

43. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with and/or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of certain Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, certain Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions

as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 15, 2020                                  Respectfully submitted,

                                                                **HALPER SADEH LLP**

                                                                /s/Zachary Halper
                                                                Zachary Halper, Esq.
                                                                36 Kingston Run
                                                                North Brunswick, NJ 08902

Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: zhalper@halpersadeh.com

Daniel Sadeh, Esq. (*pro hac vice* application forthcoming)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

14